UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL QUAGLIA, on behalf of Plaintiff and the class members described herein, and the PEOPLE OF THE STATE OF ILLINOIS ex. rel. QUAGLIA )<br><br>Plaintiffs,<br><br>v.<br><br>NS193, LLC; SN SERVICING CORPORATION; And McCALLA RAYMER LEIBERT PIERCE, LLC<br><br>Defendants. | Case No.21-cv-03252<br><br>Honorable Charles P. Kocoras Judge Presiding |

**SN SERVICING'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Defendant, SN Servicing Corporation ("SN Servicing"), by its attorneys, responds to the Motion to Remand Action to State Court [D.E. 10] ("Motion to Remand") filed by Plaintiffs, Paul Quaglia and the People of the State of Illinois *ex rel.* Paul Quaglia ("Plaintiffs"), as follows:

**Introduction**

SN Servicing removed Plaintiffs' Complaint to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because Plaintiffs' putative class action alleged that SN Servicing violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* (the "FDCPA") when it provided legally protected private personal information about Plaintiffs regarding a debt to unauthorized third-parties and this Court has federal question jurisdiction under 28 U.S.C. § 1331 to adjudicate this claim.

Plaintiffs' Motion to Remand argues that this matter should be remanded to the state court because under applicable Seventh Circuit law, Plaintiffs lack Article III standing to pursue their claims in federal court against the defendants for a violation of the FDCPA. Notably, Plaintiffs

fail to expressly state why they purportedly lack standing to assert an FDCPA claim before this Court, but presumably the Plaintiffs take the position that they do not have Article III standing because they have not suffered an injury in fact. *See e.g.,* Motion to Remand, ¶ 10 (citing *Gunn v. Thrasher, Buchmann & Voelkel, P.C.,* 982 F.3d 1069 (7th Cir. 2020) (determining trial court lacked Article III standing over FDCPA claim because plaintiff failed to allege any "concrete harm")). Fatal to their argument, Plaintiffs overlook the allegations in Count IV of their own Complaint that allege potentially concrete harms arising from the disclosure of personal information to third-parties. *See* Compl., ¶¶ 78-82. Plaintiff's motion fails to clearly state that they are not seeking actual damages. Therefore, this Court should deny the Motion to Remand.

Specifically, Plaintiffs allege that the class plaintiffs suffered a "known, negative effect" from a purported unauthorized disclosure of account information to unknown third-parties. *See* Compl., ¶ 80. The Seventh Circuit has recognized that an invasion of a person's privacy rights – similar to the Plaintiffs' allegations here – is a sufficiently concrete injury to establish standing under Article III. *See Fox v. Dakkota Integrated Sys., LLC,* 980 F.3d 1146, 1153 (7th Cir. 2020) (citing *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1272 (9th Cir. 2019) (analogizing claims for a violation of Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14, et. seq., to a common law tort for invasion of privacy)); see also 15 U.S.C. § 1692(a) (FDCPA enacted to address "invasion of individual privacy"); *Adkins v. Fin. Recovery Servs.,* 2015 U.S. Dist. LEXIS 131884 at *7, 2015 WL 5731849 (N.D. Ill. September 30, 2015) ("the invasion of privacy" is a "core concern animating the FDCPA"). Accordingly, this Court should deny the Plaintiffs' Motion to Remand.

**Argument**

I. **The Seventh Circuit Has Determined that Invasion of Privacy is a Concrete Harm for purposes of Article III Standing.**

For a plaintiff to have standing under Article III, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The test for an injury in fact "asks whether the plaintiff has suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Fox* at 1152 (quoting *Spokeo* at 1548) (additional citations and quotations omitted)). A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement. *Spokeo,* at 1549. The plaintiff must show that the "statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 622 (7th Cir. 2020) (quoting *Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, 887) (7th Cir. 2017)).

As explained by the Seventh Circuit in *Fox*, "[c]oncrete injuries can be either tangible or intangible." *Id.* Relevant here, the court further explained that intangible injuries can be difficult to recognize, especially when they arise from a statutory violation. *Id.* At issue in *Fox*, plaintiff claimed a violation of the BIPA based upon, *inter alia,* the defendants alleged failure to obtain the plaintiff's informed consent before collecting biometric identifiers and unlawfully disseminating "her biometric data to unnamed third parties without her consent." *Id.,* at 1150. Ultimately, the court in *Fox* concluded that the plaintiff had standing under Article III and that the "unlawful retention of a person's biometric data is" a concrete and particularized injury because it "qualifies as an invasion of a 'private domain, much like an act of trespass would be.'" *Fox,* at 1155 (quoting *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 624-25 (7th Cir. 2020)); *see also, Hazlitt v. Apple Inc.,* Case No. 20-cv-421, 2021 U.S. Dist. LEXIS 110556, *15 (S.D. Ill. June 14, 2021);

3

*Neals v. Partech, Inc.,* Case No. 19-cv-05660, 2021 U.S. Dist. LEXIS 24542 (N.D. Ill. Feb. 9, 2021); *Wilcosky v. Amazon.com, Inc.,* Case No. 19-cv-05061, 2021 U.S. Dist. LEXIS 22274 (N.D. Ill. Feb. 5, 2021).

The reasoning of the court in *Fox* has recently been echoed by the Supreme Court's ruling in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 \_\_\_\_, 210 L. Ed. 568 (2021), where the Court explained that when looking for a concrete injury arising from a statutory violation the "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." 210 L.Ed. at 583 (*quoting Sprint Comm. Co. v. APCC Services, Inc.,* 554 U.S. 269, 274 (2008)). That inquiry, as directed by the Court, asks "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* The Court went further to identify "reputational harms, disclosure of private information, and intrusion upon seclusion" as examples of concrete intangible harms "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 584.

Here, Plaintiffs' claimed violation of Section 1692c(b) of the FDCPA is similar to the claimed violations of BIPA in *Fox* and clearly within the "traditionally recognized" claims of concrete intangible harms highlighted by the Supreme Court in *Ramirez*. Plaintiffs allege that providing their private and confidential information to an unauthorized third-party constitutes a communication under Section 1692a(2) and that this spread of information may cause harm. *See* Compl. ¶ 71-78. (Plaintiff actually cites to Section 1692a(3) in paragraph 71, but this appears to be a scrivener's error). As a result, Plaintiffs allege they suffered an injury in fact covered by the FDCPA that is fairly traceable to SN Servicing allegedly disclosing their personal information to the employees of an unauthorized third-party letter vendor. *See* Compl. ¶¶ 80 -81. Thus, under

4

*Fox* this is sufficient to establish Article III standing and SN Servicing has met its burden to establish federal jurisdiction.

To be clear, SN Servicing does not acknowledge the validity of the Plaintiffs' claims for purported damages or otherwise concede that Plaintiffs in fact suffered any harms by the purported acts or omissions of SN Servicing. Yet, for purposes of removal, the parties and the Court are constrained by the actual claims and allegations in the pleading, and due to the artful manner in which Plaintiffs argue their Motion to Remand, it is entirely unclear if Plaintiffs are attempting to assert damages for a concrete invasion of privacy, reputational harms, or the disclosure of private information. *See e.g.,* Compl. ¶ 80 (alleging that Plaintiffs suffered a "known, negative effect" when their personal information was disclosed to the employees of an unauthorized third-party letter vendor in connection with the collection of the debt). The Plaintiffs should not be allowed to skirt the issue and this Court's jurisdiction, but still assert and seek damages in the state court following a remand. *See, e.g., See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021) ("…if the plaintiffs change their tune in the state court, [defendants] will be able to attempt to remove again to a federal court…" (citing 28 U.S.C. § 1446(b)(3), (c)).

Put another way, Plaintiffs can resolve any question as to their claimed damages – and any potential Article III standing – by clearly and concisely disclaiming any damages caused by the purported acts of SN Servicing or the other defendants. Plaintiff have not done so. Instead, they allege a "known, negative effect" harm from the unauthorized disclosure of their private personal information to third-party letter vendors. At bottom, Plaintiffs alleged FDCPA claims here concern an alleged "invasion of privacy." *See e.g.,* Compl. ¶¶ 80-82. This is plainly sufficient to establish Article III standing.

5

Moreover, once Article III standing exists over Plaintiffs' alleged FDCPA claim, this Court should exercise supplemental jurisdiction over Plaintiffs' remaining claims under 28 U.S.C. § 1367(a) because the alleged claims also arise out of Plaintiff's mortgage loan. See, e.g., *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (""[s]ection 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have had original jurisdiction."); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997) (federal district courts have supplemental jurisdiction over state law claims "that derive from a common nucleus of operative fact," with a federal claim that is properly before the court."). Plaintiffs' alleged state law claim for violations of the Illinois Collection Agency Act, 225 ILCS 425 (the "ICAA") share a common nucleus of operative facts with his FDCPA claims because all of Plaintiffs' claims arise from: (1) alleged misrepresentations sent to Plaintiff by a letter vendor as to what entity owned the loan at issue; (2) NS193 allegedly being unlicensed under the ICAA; and (3) the alleged wrongful threat of foreclosure sent to Plaintiff by a letter vendor "on behalf of an unlicensed debt buyer, NS193, and by causing MRLP to make similar threats." *See* Compl., generally.

Accordingly, for all these reasons this Court should deny the Plaintiffs' Motion to Remand.

WHEREFORE, SN Servicing respectfully requests that this Court enter an order denying the Motion to Remand, and providing any further and additional relief that the Court deems necessary and appropriate.

Dated: August 3, 2021                                                            Respectfully submitted,

**SN SERVICING CORPORATION,**

Ernest P. Wagner
MAURICE WUTSCHER LLP
105 W. Madison Street, Suite 603
Chicago, Illinois 60602

Tel. (312) 416-6170
Fax (312) 284-4751
Email: Litigation@mauricewutscher.com

                                      By:    /s/ Ernest P. Wagner
                                                  Ernest P. Wagner

**Certificate of Service**

      I hereby certify that on **August 3, 2021**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all registered parties.

                                              /s/ Ernest P. Wagner