UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL QUAGLIA, on behalf of Plaintiff and the class members described herein, and the PEOPLE OF THE STATE OF ILLINOIS ex rel. PAUL QUAGLIA, <br><br> Plaintiffs, <br><br> v. <br><br> NS193, LLC; SN SERVICING CORPORATION; and MCCALLA RAYMER LEIBERT PIERCE, LLC, <br><br> Defendants. | 21 C 3252 <br><br> Judge Charles P. Kocoras |

## ORDER

This matter is before the Court on Plaintiffs' Motion to Remand Action to State Court under 28 U.S.C. § 1447(c) [ECF No. 10]. For the reasons that follow, the Court grants Plaintiffs' Motion.

## STATEMENT

Plaintiff Paul Quaglia filed a Class Action Complaint in the Circuit Court of Cook County against Defendants NS193, LLC ("NS193"), SN Servicing Corporation ("SN Servicing"), and McCalla Raymer Leibert Pierce, LLC ("MRLP"). The Complaint alleges the following causes of actions: (1) violations of the Illinois Collection Agency Act ("ICAA"), 225 ILCS § 425 *et seq.* (as to NS193 only); (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692 *et*

*seq.* (as to SN Servicing only); and (3) a proposed class claim for FDCPA violations related to alleged communications to letter vendors that purportedly provided legally protected private personal information about Plaintiff regarding a debt to an unauthorized third party (as to SN Servicing and MRLP). SN Servicing removed the case to federal court under 28 U.S.C. § 1331, and Plaintiff now moves to remand the action back to state court.

     A defendant may remove a case to federal court if the federal district court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441; 28 U.S.C. §1446. Removal under § 1441 is strictly construed, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), and the party seeking removal has the burden of establishing that removal is appropriate, *Application of Cnty. Collector of Cnty. of Winnebago, Ill.*, 96 F.3d 890, 895 (7th Cir. 1996). Any doubts in favor of federal court jurisdiction favors remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). This policy has always been "rigorously enforced by the courts," *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938), and "the federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

     In the motion to remand, Plaintiffs argue the Court does not have subject matter jurisdiction over their lawsuit based on the lack of Article III standing. As the proponent of subject matter jurisdiction, to establish Article III standing SN Servicing must show: (1) Plaintiffs suffered an actual or imminent, concrete and particularized injury-in-fact;

2

(2) a causal connection between the injury and the challenged conduct; and (3) the likelihood the injury will be redressed by a favorable decision. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). As for the consumer protection statutes, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Simply put, "[n]o concrete harm, no standing." *Id*. at 2200.

This case turns on the "foremost" standing requirement—injury in fact. To establish injury in fact, a plaintiff must allege a "concrete and particularized" injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992), and it is concrete if it is "real, and not abstract," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1547, 1548 (2016). In the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury. *Id*. at 1549. To determine whether a plaintiff suffered concrete harm, the Court considers "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204.

The Seventh Circuit recently decided a slew of cases addressing Article III standing in FDCPA cases. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021) (listing cases); *see also Wadsworth v. Kross, Lieberman & Stone, Inc.*, 2021 WL 3877930, at *3 (7th Cir. 2021). "These cases involved claims under various provisions of the [FDCPA], but each one applied the same fundamental principle: a violation of the FDCPA 'does not, by itself, cause an injury in fact' sufficient to confer Article III standing." *Dahl v. Kohn L. Firm*, 853 F. App'x 1, 2 (7th Cir. 2021) (quoting *Markakos*, 997 F.3d at 779); *accord Wadsworth*, 2021 WL 3877930, at *2. Rather, an FDCPA violation causes an injury in fact only if it has "harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Wadsworth*, 2021 WL 3877930, at *2 (quotation marks omitted). "For example, an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780.

But none of the recent cases discuss the relevant sections at issue in Count IV[1], Section 1692c(b) and Section 1692f. Section 1692c(b) provides that "without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by

---

[1] Defendants do not argue Plaintiff alleged a concrete injury so as to confer Article III standing with respect to Counts I-III, but instead contend the Court can exercise supplemental jurisdiction over these claims.

4

law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). A "communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1962a(2).

The alleged communications to unauthorized third parties in this case were to the Defendants' mailing vendors. Dkt. # 1-1, ¶¶ 69-70. Plaintiffs allege Defendants furnished the mailing vendors with Plaintiffs' personal information and information about their debts, which the mailing vendors then populated into a prewritten letter template, printed, and mailed the letters to Plaintiffs. *Id*.

While the Seventh Circuit has not spoken on this issue, the Eleventh Circuit recently addressed standing in the context of Section 1692c(b) in *Hunstein v. Preferred Collection & Management Services, Inc.*, 994 F.3d 1341 (11th Cir. 2021), which also involved disclosure of private information to mailing vendors. In *Hunstein*, the Eleventh Circuit concluded that the disclosure of private information—the harm caused by a violation of Section 1692c(b)—bears a close relationship to a harm traditionally regarded as providing a basis for suit and so suffices to confer Article III standing on a plaintiff whose personal information was shared with a third party.[2] *Id*. at 1347–48.

---

[2] The Third Circuit also recognized that the disclosure of personal information is a concrete injury for purposes of the FDCPA, specifically Section 1692f. *Morales v. Healthcare Revenue Recovery Grp.*, 2021 WL 2800507, at *2 (3d Cir. 2021) ("Disclosing 'personal information' is a concrete injury. The envelope's barcode disclosed Morales's protected information, which caused a concrete injury in fact under the FDCPA."); *see also DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019) (recognizing "that the harm inflicted by exposing the debtor's account number [is] 'a legally cognizable injury.'" (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018))). These cases, however, were decided before *TransUnion*. The same goes for *Hunstein*. Moreover, manner in which the

The *Hunstein* court also concluded that invasion of privacy is one of the harms against which the FDCPA is directed, and therefore the "judgment of Congress" indicates that violations of Section 1692c(b) constitute a concrete injury. *Id*. at 1348–49; *see also* 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.").

This, combined with the Supreme Court's recognition in *TransUnion* that various intangible harms—such as the disclosure of private information—can be concrete for purposes of Article III standing have led other courts in this District to follow the Eleventh Circuit in *Hunstein*. 141 S. Ct. at 2204; *see also Liu v. Radius Global Solutions, LLC*, 2021 WL 4167585, at *2 (N.D. Ill. 2021) (following *Hunstein*); *Thomas v. Unifin, Inc.*, 2021 WL 3709184, at *2 (N.D. Ill. 2021) (same); *Keller v. Northstar Location Servs.*, 2021 WL 3709183, at *2 (N.D. Ill. 2021) (same).

We respectfully disagree with the Eleventh Circuit and our esteemed colleagues who have concluded that a mere violation of Section 1692c(b)—specifically, the disclosure of information pertaining to a consumer's debt to a mailing vendor—is, on

---

information was disclosed in the Third Circuit cases was on the outside of an envelope, for all the world to see. Here, the alleged disclosure was merely to a mailing vendor for the purpose of creating, printing, and mailing a letter to the consumer on the debt collector's behalf.

6

its own, sufficient to confer Article III standing. *Hunstein*, though instructive, is not binding upon this Court.

The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, ***disclosing a consumer's personal affairs to friends, neighbors, or an employer***, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (emphasis added). But is difficult to imagine Congress intended for the FDCPA to extend so far as to prevent debt collectors from enlisting the assistance of mailing vendors to perform ministerial duties, such as printing and stuffing the debt collectors' letters, in effectuating the task entrusted to them by the creditors—especially when so much of the process is presumably automated in this day and age. In the Court's view, such a scenario runs afoul of the FDCPA's intended purpose to prevent debt collectors from utilizing truly offensive means to collect a debt.[3]

---

[3] The Eleventh Circuit did recognize that its "interpretation of [Section] 1692c(b) runs the risk of upsetting the status quo in the debt-collection industry . . . [and that its] reading of [Section] 1692c(b) may well require debt collectors (at least in the short term) to in-source many of the services that they had previously outsourced, potentially at great cost." *Hunstein*, 994 F.3d at 1352. Moreover, the court recognized that "those costs may not purchase much in the way of 'real' consumer privacy." *Id*. Nevertheless, the court noted that its "obligation is to interpret the law as written, whether or not we think the resulting consequences are particularly sensible or desirable," and went on to say that "if Congress thinks that we've misread [Section] 1692c(b)—or even that we've properly read it but that it should be amended—it can say so." *Id*.

A court in the Eastern District of New York recently rejected the application of the *Hunstein* rationale with respect to Section 1692c(b) claims involving disclosures of debt information to mailing vendors, stating: "[A]ttempts to analogize the harms alleged to a traditionally common law tort simply fail . . . . [I]t would be difficult to suggest, using the 'invasion of privacy' analysis adopted in *Hunstein*, that communication of a purported non-payment of a relatively *de minimis* debt to a mailing vender constitutes a 'matter publicized . . . of a kind that . . . would be highly offensive to a reasonable person.'" *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *6 (E.D.N.Y. 2021). The court further suggested the "mailing vendor" theory does not appear viable in the wake of *TransUnion*. *Id*. at *5–6; *see also Bush v. Optio Solutions, LLC*, 2021 WL 3201359, at *3 (E.D.N.Y. 2021).

In *TransUnion*, the Supreme Court observed:

> the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is . . . unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications.

141 S. Ct. at 2210 n.6 (citations omitted). *In re FDCPA Mailing Vendor Cases* stated that while this language is *dicta*, it "appears dispositive of the mailing vendor theory." 2021 WL 3160794, at *6.[4]

---

[4] Notably, the Colorado Supreme Court has held that "the use of an automated mailing service . . . by a debt collector is a *de minimus* communication with a third party that cannot reasonably be perceived as a threat

8

We agree. Simply put, the Complaint does not sufficiently allege a concrete and particularized injury-in-fact sufficient to satisfy Article III standing for Plaintiffs' Section 1692c(b) claim. Plaintiffs' Section 1692f claim suffers from the same fatal flaw. So, the Court grants Plaintiffs' motion to remand but declines to award fees and costs to Plaintiffs under 28 U.S.C. § 1447(c). *See, e.g., Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008); *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir. 1999).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand [ECF No. 10] is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County. Civil case terminated. It is so ordered.

Dated: 10/12/2021

                                                                                      /s/ Charles P. Kocoras
                                                                                    Charles P. Kocoras
                                                                                    United States District Judge

---

to the consumer's privacy or reputation." *Flood v. Mercantile Adjustment Bureau, LLC,* 176 P.3d 769, 777 (Colo. 2008) (citing FTC Official Staff Commentary, § 805(b)(3), 53 Fed. Reg. 50097, 50104 (Dec. 13, 1988) (stating that "incidental contacts" between a debt collector and a telephone company for the purpose of transmitting information to the consumer do not constitute an impermissible communication with a third party)). In that case, the Colorado Supreme Court was assessing whether the use of a mailing service violated Section 5-16-104 of the Colorado Fair Debt Collection Practice Act, in which the prohibitions against communications with third parties are virtually identical to Section 1692c(b) of the FDCPA.

The Seventh Circuit has also recognized (albeit in a slightly different context) that the FDCPA is not aimed "at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters." *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (discussing whether such companies are appropriate defendants in an FDCPA action and finding joinder of the company that stuffed and mailed envelopes was frivolous).